My first case of the morning is 4090503, En Re Estate of Evelyn Biddle-Broers, in singly ingressions, appellee and appellant. Mr. Gregory for the appellant, Mr. McGrath for the appellee, you may proceed. My name is William Gregory, and I'm here on behalf of Linda Singley, and Your Honor, I'd just begin with just a brief background of this case, because both Ms. Singley and Ms. Gresham essentially were put in the same position by an individual by the name of David Biddle. David Biddle contracted to do some work on their homes, essentially started the work and then never finished it. Both Ms. Singley and Ms. Gresham obtained judgment orders against Mr. Biddle for his breach of contract, and subsequently to those judgments, Mr. Biddle's mother passed away, which is the estate in which these claims were filed. As part of that estate, Mr. Biddle was entitled to receive a certain sum of money, and I don't have the exact amount right in front of me, but I believe it was somewhere around $11,000. As part of the estate, both Ms. Singley and Ms. Gresham filed requests with the court in order to obtain payment of that money over to them as satisfaction of the judgments that were owed to them. Obviously, by the record, as you can see, Ms. Gresham was able to obtain a motion for turnover order in December of 2008. About a week prior to that turnover order, we had filed an estate claim on behalf of Ms. Singley in an attempt to also enforce her judgment in the hopes of being able to obtain some type of payment from the estate for the judgment that Ms. Singley had obtained. After filing the estate claim, we were advised that the court was not going to honor our request as an estate claim because technically it was not a claim directly against the estate, but it's a claim against one of the beneficiaries of the estate. We were asking that the money paid over to the beneficiary be paid over to our client. So therefore, we filed a subsequent motion for turnover, which was also granted at a later time. And once the estate was actually determined, at the time that both of those turnover orders were filed, the estate had not, there was no accounting on the estate. There was no determination as to whether Mr. Biddle was going to get any money or how much money he might be entitled to receive as part of the estate. Once that was completed, the trial court held a hearing to determine how to distribute what was owed to Mr. Biddle. And at that time, as you can see in reviewing the trial court order, the trial court judge, Judge Pacey, made a ruling that because Ms. Gresham had obtained the first turnover order, she was entitled to priority. And so therefore, the money that was being paid to Mr. Biddle was going to be turned over to Ms. Gresham. Because of the fact that what Ms. Gresham was owed exceeded the amount that Mr. Biddle would receive, Ms. Gresham was then awarded the entire amount that Mr. Biddle was entitled to. We, excuse me, we had filed a motion to reconsider with the judge. Basically, our argument was twofold. One of the arguments that we felt at this point, we feel was the way that the judge should have ruled, was that the funds would be split on a pro rata basis. Essentially, both parties were standing in the same shoes. Both parties had the same rights. Both parties had the same claim against the proceeds that Mr. Biddle received. This is not a case where one party had a secured claim and another party had an unsecured claim or one party had some type of secured agreement that was done prior to the other. This is just two unsecured creditors who have judgments against Mr. Biddle going to the court and asking them to turn over funds that he was going to receive at some point in the future to them. And maybe just because in my practice I deal a lot with hospital liens, it's always been my understanding that when you present a claim, and even in the estate claims, if you have two unsecured claims on the same footing, those claims, even if one is filed first and the other is filed second, those claims are not paid based on priority, but those claims are paid out on a pro rata basis. It's the same thing with liens. If you have a personal injury settlement and you have a lump sum fund that you're going to distribute that money from and two different hospitals file liens against that or several doctors or whatever, if they file a lien against that, the liens are not paid based on who got their lien there first. The liens are paid on a pro rata basis because each of those claimants are on the same footing. And as I cited in my briefs, the bankruptcy court essentially does things the same way. And so, I mean, as far as I was aware and what I found, I didn't really find anything where the statutes or cases had distinguished priority when both claimants stand in the same shoes and there is no real priority as far as any type of a secured interest or any other type of statute that would grant any priority to one party versus the other. And so, one of our requests to the court was that the claimants, each claim would be paid a pro rata basis of what they were owed, which would partially satisfy the amounts they were owed to both Ms. Singley and Ms. Gresham. As far as that's concerned, I mean, you know, obviously we didn't present any direct statutory authority other than just how the courts have handled similar situations in the past. And so, it's our position that the trial court should have adjudicated these claims on a pro rata basis based on the fact that both parties stood in the same shoes and neither party technically would have had priority. And the alternative, though, what we're looking at is because of the fact that the trial court did rule that first in time got priority, then it becomes a question of who's first in time and how does that priority determine? The trial court determined that based on the turnover orders. Ms. Gresham was able to obtain the first turnover order and there's no dispute as to that. And so, if you're looking at just specifically those turnover orders, then Ms. Gresham would have priority as the trial court found. But prior to either of those turnover orders, we had filed a citation to discover assets against Mr. Biddle. Mr. Biddle had been served with that citation and while he had appeared for that citation, that citation was never dismissed. The court order adjourned that citation. And so, as far as we were looking at it, it's our position that that citation lien that's created by statute would have continued against its claim. And that that citation lien would have attached to that claim. And so, in addition to that, we also did file an estate claim, which I understand that the court rejected. But the estate claim was there. There were attempts for us to enforce the claim in other ways, enforce the judgment in other ways against the estate. So, essentially what we're asking, you know, is first of all, just that the court would look at it and say that this should be a pro-rata split. Basically, just because both parties stand in the same shoes. At the time that either of the turnover orders were there, there was no money available. There was no funds. It wasn't even sure if there were going to be funds. And so, it would seem like that based on the way that these claims are typically handled, it should be paid on a pro-rata basis. And the alternative, we would argue that our citation lien would have given us the priority versus the turnover order that was filed by Mrs. Gresham. I don't think that Judge Pacey relied on it. What does that subject to language mean? Well, and I guess the way that I viewed it when it was put into the order, because, I mean, if you look at the order, I mean, I drafted the first half of the order. And then Mrs. Gresham's counsel reviewed it and put that language on the bottom. We didn't discuss what the language meant at the time that it was written at all. And so, like I said, having done a lot of work involving hospital liens, my thought on the matter is, well, one lien is always subject to the fact that there might be another lien. And if you have two liens, I mean, if you're the only lien holder, then you're entitled to whatever funds are available to pay it. But if there's two lien holders, then your lien is going to be subject to the fact that there's another lien. And so you may not get technically everything you could recover, because a portion of that's going to be paid to another lien holder. And even the language that she cited... In small claims practice, for example, if two or three different people get a judgment, and I'm talking about people now, not entities like... Or cases that involve liens by hospitals. But just individual creditors, for whatever reason they're accredited. And they get judgments. And then one of them does something to pursue the judgment, and the others do something, but they don't do it until later. Or they serve a citation, but there's no action on that citation for a year, a year and a half. Do the judgments have priority? Does the person who pursues the judgment have priority? Does the person who acts with diligence have priority? Do people who agree to the insertion of language, or in the case of satisfying judgments, this is in full satisfaction? What's that language mean? Well, it means full satisfaction. Not because case law says that, but because that's what the words say. So you want to analogize it to bankruptcy and some other proceedings. How about analogizing it to just ordinary practices in small creditors? Well, I guess just hypothetically, I guess it would depend on exactly what was done and what wasn't done. Okay, then how about in this case? What was done is what wasn't done. Well, I mean, in this case, we filed a citation. Mr. Biddle was served with that citation. What is it about that citation that makes you think that it lasts? Well, because the language of the statute states that there is a general lien created against the assets of the debtor when that citation is served. And then, according to my understanding of the Supreme Court Rule 277, I mean, by that language, the citation lien would expire six months after the person actually appears. But then it can't be continued. Maybe this is mistaken, but my understanding was that if the citation is not dismissed, if the citation is adjourned, then that citation lien would continue. For how long? I don't think that there's anything that says for how long. I mean, I would say that the judgment is good for seven years. It can be revived after seven years up to a maximum of 20 years. So as long as the judgment is outstanding, I mean, if the judgment can be collected up to 20 years, then there's a built-in deadline right there for you can collect this judgment up to 20 years. The judgment is good for seven unless it's revived at that point. So a non-revived judgment, if I serve a citation to discover assets and I can talk the judge into adjourning it, I can just sit and wait for six and a half years and probably not have to do anything else. Well, I mean, you're taking the chance that you're going to luck into something. I'm not on that case. But I would say I would see no reason why that wouldn't be the case. If the judgment is good for seven years and the citation lien attaches to whatever properties owed and that money hasn't been paid, I mean, if Mr. Biddle owes the money and he hasn't paid it and they have seven years to collect it, why wouldn't it continue for that seven years? It just seems logical to me that that would be the way it would work. I mean, yeah, that's probably not the best way to handle things because you want to do something to try to collect on that judgment if there are any assets available. But if, as we did at the time of the citation, determined that Mr. Biddle didn't really have any assets at that time, but yet we adjourned the citation to continue it, if we discover at some point sort of like what the court did in Padme. I mean, there's no language in there that says that the court said anything specific as far as how to continue that citation lien. But they were served in, I believe it was 1987, with a citation. And then the court extended that citation in May of 87. They served the citation in December of 88. The court extended that lien. And I just think that the reasoning is, I mean, if you've got that judgment and that money is owed, and then the lien is established by serving the citation, then as long as that judgment is still collectible, there's no reason why the lien that's associated with that judgment wouldn't also be collectible. Well, there's a difference between the lien of judgment and the life of a citation under the Supreme Court rule. I mean, obviously, if you've got a judgment and it's a judgment lien, and it's good for seven years and can be extended beyond that. But Rule 277F says that a citation lasts for six months. But it also says that it can be continued. It can be. Where was it continued here? Well, I guess I would say that it was continued because the citation was not discharged. The citation was not dismissed. The citation was adjourned. And so there's no specific. I haven't found any specific direction to say these are the magic words that are required to continue it. But if you look at what the court did in Pike-Bennett, I don't know that adjourning the citation is any different than what happened in that case. And in that case, the court found a year and a half later, which is almost this situation. I mean, our citation was, well, actually, it was a little over a year when we started doing the turnover orders after the citation was adjourned. The citation was adjourned in December of 2007. And then in December of 2008, the party started filing the estate claims and the motions for turnover and those types of things because his mother had passed away sometime, I don't know the exact date of her death, but sometime in 2008. And so it's really the exact same situation, essentially, as Pike-Bennett had. And, you know, I mean, and maybe there needs to be some clarification as to what's required to extend that. But it's always been our understanding that if the citation is adjourned, then the citation lien is extended because it hasn't been dismissed. It hasn't been completely resolved. Mr. Brigger, is there a docket entry or an order that was written by Judge Pacey at the time of December of 2007 after the citation hearing? The citation hearing wasn't actually conducted in front of Judge Pacey. Judge Pacey was the judge for the estate. And so I forget the name of the judge that was the citation. But there was an order entered at the citation hearing. I didn't see it in the appendix. It is. Maybe it's in there and I missed it. I believe I cited to it in my brief as well. So I'm pretty sure it was attached to part of the appendix. But, I mean, basically the citation order says that this matter coming on plaintiff's citation, defendant appearing pro se, it is ordered that the citation is adjourned and a motion for turnover is set for January 18, 2008 at 145. And actually, I guess I could say... What happened on January 18th? On January 18th, there was an order entered. Actually, Mr. Biddle did have a trailer of some sort that he advised us and he had actually indicated that it was jointly owned with someone else. And so I'm not finding the order, but I know that basically... Oh, here it is. Oh, no, that's in March. I guess it was continued to March. Actually, it looks like it was continued until March. And then in March, the only thing that was entered was an order directing Mr. Biddle to turn over the trailer that he had possession of once he provided title to it. So did that terminate the citation hearing, do you think? No, because that was a separate motion. That was a hearing on the actual separate motion for turnover that we had requested. Based on the citation, he indicated that he had had some assets. We made an oral motion for turnover of those assets to which Mr. Biddle objected. And so that was continued. And then in March, that order was entered in relation to the motion for turnover, but there was never an order entered subsequent to the December order in relation to the citation. That was the only order directly related to the citation. The citation was never dismissed or otherwise addressed with the court up until the point where we filed our motion for turnover in the estate. We have no further questions. Thank you, Counsel. Thank you, Counsel. Ms. McGrath? Good morning, Your Honors. Counsel, may it please the Court. Your Honors, for the two reasons that Judge Pacey ordered the money to be turned over to my client, there is no basis for reversal in this case. I respectfully disagree with Counsel that the parties were in the same shoes, same position, for the two reasons. The first reason is the February 6, 2008 order, which was entered in Ms. Singley's arbitration case. That was case number 08AR436. That is the order that has the language subject to Ms. Gresham's, my client's turnover order, which had been filed in her arbitration case and had subsequently been filed in this probate case that we're talking about. Counsel is right. I added that language to that order on February 6. In fact, I was not a part or a counsel in that arbitration case. In Ms. Singley's case, I had nothing to do with that case other than that we were to try to collect against Mr. Biddle. I appeared in court on the day Attorney Gregory was there on his motion for turnover order. He did show it to me. I did put that language in. Mr. Gregory reviewed the order and signed the order. The language was put in there because I wanted to protect Ms. Gresham's right to collect her entire judgment from the Brewer's estate. The second reason that Judge Pacey is not wrong in his ruling is that the citation, which was issued in December of 2007, had clearly expired. Supreme Court Rule 277F would have required that Ms. Singley go into court and get a court order to extend that citation. That's what Illinois Supreme Court Rule 277F states. That was not done. For those two reasons, Ms. Gresham's lien in the probate matter does have priority and Judge Pacey's ruling should be affirmed. I'm available for any questions, Your Honors. No questions. Thank you. Mr. Gregory? Your Honors, just briefly, I guess I would just say that if, in fact, the court is looking at that language subject to as something that was drafted by myself because it was in our order, then I clearly did not have any intentions of that language creating a priority for Ms. Gresham. That was never my understanding of what that language would mean. And so, therefore, I think as she even cited in her brief, it just means under the influence of another order. And I don't think that that doesn't say Ms. Gresham has priority or that our claim is subordinate to hers or anything along those lines. In my mind, it was just simply acknowledging the fact that Ms. Gresham had a claim as well and that she had a legitimate claim and that we weren't disputing that. So, that's all I have. Thank you. We'll take the matter under advisement.